

FILED
CLERK, U.S. DISTRICT COURT

7/15/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>YEVGENI GERSHMAN,<br>  aka "Giora,"<br>EVGENNI TOUREVSKI,<br>  aka "Eugene,"<br>ALLAN AUSTRIA,<br>  aka "Elica,"<br>YARIN COHEN<br>  aka "YC,"<br>ARTHUR KATS,<br>GILBERT ARENAS,<br>  aka "Agent Zero,"<br>IEVGEN KRACHUN, and<br>VALENTINA COJOCARI,<br><br>        Defendants. | CR 2:25-CR-00595-MCS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1955: Operating an Illegal Gambling Business; 18 U.S.C. § 1001(a)(2): Making False Statements; 8 U.S.C. § 1325(c): Marriage Fraud; 18 U.S.C. § 1546(a): False Statements in Visas, Permits, and Other Immigration Documents; 18 U.S.C. §§ 981(a)(1)(C), 982, 1955(d), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[DEFENDANTS GERSHMAN, TOUREVSKI, AUSTRIA, COHEN, KATS, ARENAS, AND KRACHUN]

A.  OBJECT OF THE CONSPIRACY

1.    Beginning no later than on or about September 12, 2021, and continuing through at least on or about July 20, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants YEVGENI GERSHMAN, also known as ("aka") "Giora," EVGENNI TOUREVSKI, aka "Eugene," ALLAN AUSTRIA, aka "Elica," YARIN COHEN, aka "YC," ARTHUR KATS, GILBERT ARENAS, aka "Agent Zero," and IEVGEN KRACHUN, knowingly conspired with each other, and with others known and unknown to the Grand Jury, to operate an illegal gambling business, in violation of Title 18, United States Code, Section 1955.

B.  MANNER AND MEANS OF THE CONSPIRACY

2.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendant ARENAS would rent out a residence located on Gable Drive in Encino, California (the "Gable House") for the purpose of hosting illegal poker games.

b.    Defendant KATS, at defendant ARENAS's direction, would stage the Gable House to host illegal poker games, find co-conspirators to host illegal poker games at the Gable House, and collect rent from the co-conspirators on defendant ARENAS's behalf.

c.    Defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN, and others known and unknown to the Grand Jury, would manage illegal

Pot Limit Omaha ("PLO") poker games, among other illegal gambling games, at the Gable House.

d.   To profit from the illegal gambling operation, defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN would collect a "rake" -- that is, a fee the house would charge from each pot either as a percentage or a fixed amount per hand.

e.   Defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN would invite players to illegal poker games at the Gable House.

f.   Defendant GERSHMAN would hire young women who, in exchange for tips, would serve drinks, provide massages, and offer companionship to players at the Gable House.

g.   Defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN would charge the women a "tax" -- that is, a percentage of the women's earnings from working the games.

h.   Defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN would hire chefs, valets, and armed security for the illegal poker games at the Gable House.

i.   Defendant KRACHUN would work as a "chip runner" at illegal poker games held at the Gable House, in which capacity he would track players' winnings and losses, distribute poker chips to players, and pay employees.

C.   OVERT ACTS

3.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants GERSHMAN, TOUREVSKI, AUSTRIA, COHEN, KATS, ARENAS, and KRACHUN, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Central District of California:

3

**In 2021, Defendants ARENAS and KATS Agreed to Use the Gable House for Illegal Poker Games**

Overt Act No. 1:   On September 12, 2021, defendant KATS texted defendant ARENAS to ask whether he was "still planning on doing your own game," to which defendant ARENAS replied, "I might throw plo games at my house," referring to hosting illegal poker games at the Gable House.

Overt Act No. 2:   On October 8, 2021, defendant ARENAS texted defendant KATS the date the Gable House would be available to host illegal poker games, the amount of rent defendant ARENAS wanted to charge for hosting the illegal poker games, and the number of games he planned on hosting at the Gable House per week.

Overt Act No. 3:   On October 26, 2021, while discussing staging the Gable House to host illegal poker games, defendant KATS texted defendant ARENAS a picture of a poker table with the words "The Lion's Den" printed on top of the table.

Overt Act No. 4:   On November 10, 2021, defendant ARENAS texted defendant KATS a picture of a gold-trimmed poker table with the words "ARENAS POKER CLUB" printed on top of the table and the image of a basketball player with a jersey labeled "ARENAS" wearing the number 0.



<u>Overt Act No. 5:</u>    On November 23, 2021, defendant ARENAS texted defendant KATS that his financial advisor, R.J., was asking for rent for the illegal poker games hosted at the Gable House.

<u>Overt Act No. 6:</u>    On December 13, 2021, defendant KATS sent defendant ARENAS a text message stating that defendant ARENAS owed defendant KATS $14,000 for tables and chairs as a startup expense for hosting illegal poker games at the Gable House.

<u>Overt Act No. 7:</u>    On December 23, 2021, defendant ARENAS texted defendant KATS that he had $14,000 for him.

<u>Overt Act No. 8:</u>    On December 28, 2021, defendant ARENAS texted defendant KATS that he wanted the rake from an illegal poker game hosted at the Gable House for defendant ARENAS's birthday to go to the mother of a deceased former lover.

**Defendants ARENAS and KATS Rented the Gable House to Defendants GERSHMAN, TOUREVSKI, COHEN, and AUSTRIA for Them to Hold Illegal Poker Games**

<u>Overt Act No. 9:</u>    On January 31, 2022, defendant KATS texted defendant ARENAS that defendant TOUREVSKI was ready to host illegal poker games at the Gable House on Wednesdays.

<u>Overt Act No. 10:</u>    On February 8, 2022, defendant KATS texted defendant ARENAS that he had spoken with defendant TOUREVSKI and that defendant TOUREVSKI and his partners were ready to start hosting illegal poker games at the Gable House on the following Wednesday.

<u>Overt Act No. 11:</u>    On February 16, 2022, defendant GERSHMAN sent various phone contacts a text advertising the illegal poker game at the Gable House that night: "Tonight New Place ♠ ♣ ♥ ♦  PLO 💎 🎴. Starts 8 o'clock 🃏 🍣 🥘 🍪 👛 🔖  Starts 8 pm[.]"

<u>Overt Act No. 12:</u>  On February 16, 2022, defendant TOUREVSKI sent defendant COHEN a text advertising the illegal poker game at the Gable House, and asked defendant COHEN to send players to the game.

<u>Overt Act No. 13:</u>  On February 16, 2022, defendant KATS texted defendant TOUREVSKI the gate code to the Gable House.

<u>Overt Act No. 14:</u>  On February 17, 2022, defendant TOUREVSKI texted defendant COHEN a pay/owe sheet showing the amount of the rake, the tax charged, and the expenses incurred to host the illegal poker game, and listed the illegal poker game's partners as "YC" (referring to defendant COHEN), "Elica" (referring to defendant AUSTRIA), "Giora" (referring to defendant GERSHMAN), and "Eugene" (referring to defendant TOUREVSKI).

<u>Overt Act No. 15:</u>  On February 23, 2022, defendant TOUREVSKI sent defendant GERSHMAN a text message asking whether they were going to host their game at the Gable House that night.

<u>Overt Act No. 16:</u>  On February 23, 2022, defendant TOUREVSKI texted defendant KATS that their game that night was cancelled, to which defendant KATS replied, "What am I'm [sic] supposed to tell Gilbert that you cancelled the game 4 hours before!"

<u>Overt Act No. 17:</u>  On February 23, 2022, defendant KATS texted defendant ARENAS that defendant TOUREVSKI would not be hosting an illegal poker game at the Gable House that night.

<u>Overt Act No. 18:</u>  On March 7, 2022, defendant TOUREVSKI texted defendant KATS asking to move the illegal poker game at the Gable House from Wednesday nights to Tuesday nights.

<u>Overt Act No. 19:</u>  On April 13, 2022, in response to a question whether he would be attending the game that evening, defendant AUSTRIA replied, "What kind of question is that . . . It's my game."

Overt Act No. 20:    On June 8, 2022, defendant COHEN texted defendant GERSHMAN a pay/owe sheet showing the amount of the rake, players' winnings and losses, and amounts due to defendants GERSHMAN, TOUREVSKI, COHEN, and AUSTRIA.

Overt Act No. 21:    On June 8, 2022, defendant COHEN texted defendant GERSHMAN, "Balance still for next week rake and game: +6400."

**Defendant GERSHMAN Recruited Staff to Work at the Gable House**

Overt Act No. 22:    On February 16, 2022, defendant GERSHMAN sent text messages to women inviting them, in coded language, to work at the illegal poker game at the Gable House that night.

Overt Act No. 23:    On May 24, 2022, defendant GERSHMAN sent text messages to a woman asking her, in coded language, whether she was open to engaging in prostitution at his illegal poker game at the Gable House that night.

Overt Act No. 24:    On June 28, 2022, defendant GERSHMAN sent text messages to a woman inviting her, in coded language, to work at the illegal poker game at the Gable House that night and explaining, in coded language, that he charged women 25 to 35 percent of their earnings from working the illegal poker game.

**Defendant TOUREVSKI Hired the Dealers at the Gable House**

Overt Act No. 25:    On June 21, 2022, defendant GERSHMAN sent defendant COHEN a voice note telling defendant COHEN that defendant TOUREVSKI hired the poker dealers for the illegal poker games at the Gable House.

Overt Act No. 26:    On July 11, 2022, defendant TOUREVSKI texted a phone contact named "Frankie Poker Dealer" that the contact could work at the illegal poker game at the Gable House the next day.

Overt Act No. 27:    On July 16, 2022, defendant TOUREVSKI
confirmed with a phone contact named "Dealer Poker" that the contact
was working at the illegal poker game at the Gable House the next
Tuesday.

**Defendant KRACHUN Was a Chip Runner at the Gable House**

Overt Act No. 28:    On June 8, 2022, defendant KRACHUN texted
defendant GERSHMAN, "Hi.  Where should I bring the money and when?"

Overt Act No. 29:    On June 8, 2022, defendant KRACHUN texted
defendant GERSHMAN a sheet showing unpaid tips owed to the working
women from the prior night's game.

Overt Act No. 30:    On June 22, 2022, defendant KRACHUN texted
two pay/owe sheets to defendant TOUREVSKI showing different rake
amounts.

Overt Act No. 31:    On July 13, 2022, defendant KRACHUN texted
defendant TOUREVSKI a pay/owe sheet for the prior night's game
showing the rake amount.

**Defendant AUSTRIA Recruited Armed Security for the Gable House**

Overt Act No. 32:    On February 21, 2022, defendant AUSTRIA
recruited C.A. to work as an armed security guard at the illegal
poker games at the Gable House.

Overt Act No. 33:    On March 2, 2022, defendant AUSTRIA texted
C.A. the address to the Gable House.

Overt Act No. 34:    On June 14, 2022, defendant AUSTRIA hired
C.A. to provide armed security at an illegal poker game at the Gable
House hosted by defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN.

Overt Act No. 35:    On July 12, 2022, defendant AUSTRIA hired
C.A. to provide armed security at an illegal poker game at the Gable
House hosted by defendants GERSHMAN, TOUREVSKI, AUSTRIA, and COHEN.

Overt Act No. 36:   On July 12, 2022, defendant AUSTRIA caused C.A. to send defendant AUSTRIA a picture of a game in progress at the Gable House.

**Defendant ARENAS Monitored the Illegal Gambling at the Gable House**

Overt Act No. 37:   On February 25, 2022, defendant ARENAS sent defendant KATS a text message asking defendant KATS how much rent defendant KATS had collected as payment for hosting illegal poker games at the Gable House.

Overt Act No. 38:   On March 16, 2022, in a group chat with defendant KATS and two others, defendant ARENAS complained that "players and girls come high/drunk already" to illegal poker games at the Gable House.

Overt Act No. 39:   On April 1, 2022, defendant ARENAS texted defendant KATS to ask whether defendant KATS was going to pay him rent for hosting illegal poker games at the Gable House that week.

Overt Act No. 40:   On April 17, 2022, defendant ARENAS texted defendant KATS, "I have an idea that might bring in new players for u . . . imma [sic] do a youtube episode of me at the game but blur out players and girls that don't want to be scene [sic] for my channel."

Overt Act No. 41:   On April 20, 2022, defendant ARENAS sent defendant KATS a text message asking defendant KATS whether he had anyone who could host illegal poker games at the Gable House on Mondays.

Overt Act No. 42:   On May 18, 2022, defendant ARENAS sent defendant KATS a text message directing defendant KATS to find a new host for illegal poker games at the Gable House on Wednesdays.

<u>Overt Act No. 43:</u>  On July 8, 2022, defendant ARENAS demanded rent payments for the illegal poker games at the Gable House from defendant KATS.

**<u>Operation of an Illegal Poker Game at the Gable House on July 19 and 20, 2022</u>**

<u>Overt Act No. 44:</u>  On the late evening of July 19, 2022, and early morning of July 20, 2022, defendants GERSHMAN, TOUREVSKI, KATS, COHEN, AUSTRIA, and KRACHUN operated an illegal poker game at the Gable House, which included approximately 26 players and over a dozen staff working the game.

<u>Overt Act No. 45:</u>  On July 19, 2022, defendant KRACHUN worked as the chip runner at the Gable House.

COUNT TWO

[18 U.S.C. §§ 1955, 2(a)]

[DEFENDANTS GERSHMAN, TOUREVSKI, AUSTRIA, COHEN, KATS, ARENAS, AND KRACHUN]

4.    The Grand Jury realleges paragraphs 2 and 3 of this Indictment here.

5.    Beginning no later than in or about February 2022, and continuing through at least on or about July 20, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants YEVGENI GERSHMAN, also known as ("aka") "Giora," EVGENNI TOUREVSKI, aka "Eugene," ALLAN AUSTRIA, aka "Elica," YARIN COHEN, aka "YC," ARTHUR KATS, GILBERT ARENAS, aka "Agent Zero," and IEVGEN KRACHUN, and others known and unknown to the Grand Jury, each aiding and abetting the others, conducted, financed, managed, supervised, directed, and owned an illegal gambling business, in violation of California Penal Code Sections 337j and 330, which business involved at least five persons who conducted, financed, managed, supervised, directed, and owned all or part of the business; had been and remained in substantially continuous operation for a period in excess of thirty days; and had a gross revenue of more than $2,000 in a single day.

COUNT THREE

[18 U.S.C. § 1001(a)(2)]

[DEFENDANT ARENAS]

6.    On or about September 9, 2022, in Los Angeles County, within the Central District of California, in a petition seeking the return of funds seized by Homeland Security Investigations on or about July 20, 2022 from the master bedroom of a residence located on Gable Drive, Encino, California (the "Gable House"), and in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the United States Customs and Border Protection, defendant GILBERT ARENAS, also known as "Agent Zero," made the following materially false statement and misrepresentation to the United States Customs and Border Protection knowing that this statement and representation was untrue:

Defendant ARENAS falsely stated that he was not involved in whatever was going on at the party, referring to the illegal gambling at the Gable House on July 19, 2022.  In fact, as defendant ARENAS then knew, defendant ARENAS had knowingly provided gambling equipment at the Gable House to be used to host an illegal poker game on July 19, 2022, had knowingly rented out the Gable House to be used to host the illegal poker game on July 19, 2022, and was collecting rent from the hosts for operating an illegal poker game at the Gable House on July 19, 2022.

COUNT FOUR

[18 U.S.C. § 371]

[DEFENDANTS GERSHMAN AND COJOCARI]

A.   OBJECT OF THE CONSPIRACY

7.   Beginning no later than on or about February 4, 2022, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendants YEVGENI GERSHMAN, also known as "Giora," and VALENTINA COJOCARI, knowingly conspired with each other, and others known and unknown to the Grand Jury, to commit marriage fraud, in violation of Title 8, United States Code, Section 1325(c).

B.   MANNER AND MEANS OF THE CONSPIRACY

8.   The object of the conspiracy was to be carried out, in substance, as follows:

a.   Defendant GERSHMAN, a citizen of Israel and therefore an alien in the United States, would enter into a sham marriage with defendant COJOCARI, a United States citizen, to procure an adjustment of immigration status for defendant GERSHMAN.

b.   Defendant GERSHMAN would provide financial support to defendant COJOCARI in exchange for her participation in the sham marriage.

c.   Defendants GERSHMAN and COJOCARI would file documentation with the United States Citizenship and Immigration Services ("USCIS") to demonstrate the validity of their sham marriage, including staged photographs of the wedding ceremony and photographs of defendants GERSHMAN and COJOCARI with friends and family.

d.    Defendants GERSHMAN and COJOCARI would submit sworn immigration forms containing false statements to USCIS in support of the adjustment of immigration status for defendant GERSHMAN.

e.    Defendants GERSHMAN and COJOCARI would make verbal and written false statements, under penalty of perjury, to USCIS about living together and establishing a life together.

C.    OVERT ACTS

9.    On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants GERSHMAN and COJOCARI, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Central District of California:

Overt Act No. 1:    On February 4, 2022, defendant GERSHMAN texted defendant COJOCARI, "What time and where should I pick you up," to which defendant COJOCARI replied, "at 3," and later texted defendant GERSHMAN her address on Glade Avenue in Woodland Hills, California.

Overt Act No. 2:    On February 4, 2022, defendant GERSHMAN married defendant COJOCARI.

Overt Act No. 3:    On March 14, 2022, defendant GERSHMAN sent defendant COJOCARI a check for $1,553.

Overt Act No. 4:    On April 8, 2022, defendant GERSHMAN signed an Application to Register Permanent Residence or Adjust Status (Form I-485) that contained the following false statements he knew were false at the time: that defendant GERSHMAN resided at a residence at Glade Avenue in Woodland Hills, California since January 5, 2022; that defendant GERSHMAN had never been arrested, cited, charged, or

14

1  detained for any reason by law enforcement; and that defendant

2  GERSHMAN did not intend to engage in illegal gambling.

3      Overt Act No. 5:    On April 8, 2022, defendant COJOCARI signed

4  a Petition for Alien Relative (Form I-130) that contained the

5  following false statement she knew was false at the time: that

6  defendant GERSHMAN resided with her at a residence at Glade Avenue in

7  Woodland Hills, California since January 5, 2022.

8      Overt Act No. 6:    On April 14, 2022, defendant GERSHMAN caused

9  the fraudulent Application to Register Permanent Residence or Adjust

10  Status (Form I-485) that he had signed to be sent to USCIS.

11      Overt Act No. 7:    On April 14, 2022, defendant COJOCARI caused

12  the fraudulent Petition for Alien Relative (Form I-130) that she had

13  signed to be sent to USCIS.

14      Overt Act No. 8:    On September 28, 2022, defendants GERSHMAN

15  and COJOCARI participated in a sworn interview with USCIS at which

16  they made false statements to USCIS they knew were false at the time,

17  including that they resided together at a residence at Glade Avenue

18  in Woodland Hills, California since their wedding day and that they

19  awoke at that residence together on the morning of the interview.

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[8 U.S.C. § 1325(c)]

[DEFENDANTS GERSHMAN AND COJOCARI]

10.  On or about February 4, 2022, in Los Angeles County, within the Central District of California, defendant YEVGENI GERSHMAN, also known as "Giora," an alien and a citizen of Israel, and defendant VALENTINA COJOCARI, a citizen of the United States, knowingly and unlawfully entered into marriage, not intending to establish a life together, and for the purpose of evading a provision of the immigration laws of the United States.

COUNT SIX

[18 U.S.C. §§ 1546(a), 2(b)]

[DEFENDANT GERSHMAN]

11.   On or about April 8, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant YEVGENI GERSHMAN, also known as "Giora," under penalty of perjury, knowingly subscribed as true false statements with respect to material facts in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presented and willfully caused to be presented such application, affidavit, and other document that contained such false statements, in that defendant GERSHMAN knowingly subscribed as true and willfully caused to be presented in an Application to Register Permanent Residence or Adjust Status (Form I-485) to the United States Citizenship and Immigration Services ("USCIS"):

a.   A statement that defendant GERSHMAN resided at a residence located at Glade Avenue in Woodland Hills, California since January 5, 2022, whereas, in truth and in fact, as defendant GERSHMAN then knew, defendant GERSHMAN did not reside at the Glade Avenue residence since January 5, 2022.

b.   A statement of "No" when asked by USCIS, "Have you **EVER** been arrested, cited, charged, or detained for any reason by any law enforcement official (including but not limited to any U.S. immigration official or any official of the U.S. armed forces or U.S. Coast Guard)?" whereas, in truth and in fact, as defendant GERSHMAN then knew, defendant GERSHMAN had been previously arrested, cited, charged, and detained by law enforcement, including being detained by U.S. law enforcement officials on January 27, 2022.

17

c.    A statement of "No" when asked by USCIS "Do you intend to engage in illegal gambling or any other form of commercialized vice, such as prostitution, bootlegging, or the sale of child pornography, while in the United States?" whereas, in truth and in fact, as defendant GERSHMAN then knew, defendant GERSHMAN intended to engage in illegal gambling.

1                          COUNT SEVEN

2                    [18 U.S.C. §§ 1546(a), 2(b)]

3                       [DEFENDANT COJOCARI]

4        12.  On or about April 8, 2022, in Los Angeles County, within

5    the Central District of California, and elsewhere, under penalty of

6    perjury, defendant VALENTINA COJOCARI knowingly subscribed as true a

7    false statement with respect to a material fact in an application,

8    affidavit, and other document required by the immigration laws and

9    regulations prescribed thereunder, and knowingly presented and

10   willfully caused to be presented such application, affidavit, and

11   other document that contained such false statement, in that defendant

12   COJOCARI knowingly subscribed as true and caused to be presented in a

13   Petition for an Alien Relative (Form I-130) to the United States

14   Citizenship and Immigration Services a statement that Yevgeni

15   Gershman resided with her at a residence located at Glade Avenue in

16   Woodland Hills, California since January 5, 2022, whereas, in truth

17   and in fact, as defendant COJOCARI then knew, Yevgeni Gershman had

18   not resided with her at a residence located at Glade Avenue in

19   Woodland Hills, California since January 5, 2022.

19

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C) and 1955(d), and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b)    Any property, including money, used in violation of the offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                           FORFEITURE ALLEGATION THREE

2                              [18 U.S.C. § 982]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 982(a)(6)(A)(i) and (ii)(I) and (II), in

7   the event of any defendant's conviction of any of the offenses set

8   forth in Counts Six through Seven of this Indictment.

9        2.    Any defendant so convicted shall forfeit to the United

10  States of America the following:

11       (a)   Any conveyance, including any vessel, vehicle, or

12  aircraft used in the commission of the offense;

13       (b)   Any property, real or personal, that is used to

14  facilitate, or is intended to be used to facilitate, the commission

15  of the offense;

16       (c)   Any property, real or personal, that constitutes or is

17  derived from or is traceable to the proceeds obtained directly or

18  indirectly from the commission of the offense; and

19       (d)   In the event such property is not available for

20  forfeiture, a sum of money equal to the total value of the property

21  described in subparagraphs (a), (b), and (c).

22       3.    Pursuant to Title 21, United States Code, Section 853(p),

23  as incorporated by Title 18, United States Code, Section 982(b), any

24  defendant so convicted shall forfeit substitute property, up to the

25  total value of the property described in the preceding paragraph if,

26  as the result of any act or omission of said defendant, the property

27  described in the preceding paragraph, or any portion thereof (a)

28  cannot be located upon the exercise of due diligence; (b) has been

                                    23

1  transferred, sold to or deposited with a third party; (c) has been

2  placed beyond the jurisdiction of the court; (d) has been

3  substantially diminished in value; or (e) has been commingled with

4  other property that cannot be divided without difficulty.

5

6                                        A TRUE BILL

7

8                                        /S/
                                         _____
9                                        Foreperson

10  BILAL A. ESSAYLI
    United States Attorney
11

12  *Christina Shay*

13  CHRISTINA T. SHAY
    Assistant United States Attorney
14  Chief, Criminal Division

15  J. MARK CHILDS
    Assistant United States Attorney
16  Chief, Transnational Organized
    Crime Section
17

18  CHRISTOPHER C. KENDALL
    Assistant United States Attorney
19  Deputy Chief, Transnational
    Organized Crime Section

20  SAMUEL J. DIAZ
    Assistant United States Attorney
21  Transnational Organized Crime
    Section
22

23

24

25

26

27

28