BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SAMUEL J. DIAZ (Cal. Bar No. 304503)
Assistant United States Attorney
Transnational Organized Crime Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3045
    Facsimile: (213) 894-6269
    E-mail:    samuel.diaz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>ALLAN AUSTRIA,<br><br>    Defendant. | No. CR 25-595-MCS-3<br><br>MEMORANDUM IN SUPPORT OF GOVERNMENT'S REQUEST FOR DETENTION OF DEFENDANT ALLAN AUSTRIA; DECLARATION OF SAMUEL J. DIAZ<br><br>Hearing Date: August 4, 2025<br>Hearing Time: 2:00 p.m.<br>Location:    Courtroom of the<br>               Hon. Mark C. Scarsi |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Samuel J. Diaz, hereby files its memorandum in support of its request for detention of defendant Allan Austria.

//

//

//

This memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 3, 2025          Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
SAMUEL J. DIAZ
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................2

II.   STATEMENT OF FACTS.............................................2

      A.    Defendant's Background..................................2

      B.    Defendant Was a Partner in an Illegal Poker Operation.....4

      C.    Investigation Revealed Defendant's Involvement in an
            Array of Criminal Activity............................5

      D.    Search of Defendant's Residence Revealed Firearms........5

      E.    Magistrate Judge Granted Defendant Release on Bond.......7

III.  LEGAL STANDARD.................................................7

      A.    Standard of Review......................................7

      B.    Applicable Law..........................................7

            1.    Standard for Holding a Detention Hearing............7

            2.    Detention Standard.................................8

IV.   DEFENDANT SHOULD BE DETAINED BECAUSE HE IS A DANGER TO THE
      COMMUNITY AND A FLIGHT RISK....................................8

      A.    The Nature and Circumstances of the Charged Offenses......9

      B.    The Weight of the Evidence Against Defendant Is Strong...10

      C.    The Defendant's History and Characteristics Weighs
            Heavily in Favor of Detention.........................10

      D.    Defendant's Release Would Endanger the Community and
            Prospective Witnesses.................................11

      E.    Defendant is a Flight Risk............................12

V.    CONCLUSION....................................................13

1

## TABLE OF AUTHORITIES

2 **CASES**

3 United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).........8

4 United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008)..........13

5 United States v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990)........7

6 United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985)......8

7 United States v. Townsend.........................................12

8 United States v. White, 2018 WL 5291989, at *4 (N.D. Cal. Oct.
      19, 2018)...................................................7

9 **STATUTES**

10 18 U.S.C. § 1955.................................................9

11 18 U.S.C. § 1961(1)..............................................9

12 18 U.S.C. § 3142(f)(2)(A)........................................7

13 18 U.S.C. § 3142(f)(2)(B)........................................8

14 18 U.S.C. § 3142(g)..............................................8

15 18 U.S.C. § 371..................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3    Defendant Allen Austria, a felon who previously served a 150-

4    month federal sentence for conspiracy to traffic methamphetamine, was

5    arrested at his home on July 30, 2025 for his role as a partner in an

6    illegal gambling operation.  On the day of his arrest, law

7    enforcement searched defendant's residence and found an unregistered

8    .45 caliber pistol next to a loaded magazine and numerous rounds of

9    ammunition in a gun case under defendant's bed.  Under his left

10    bedside drawer, they found a stolen .22 caliber revolver.  Officers

11    recovered two other unregistered firearms in the home, including a

12    .22 caliber rifle and .32 caliber pistol with a loaded magazine.

13    The investigation has also revealed that aside from operating an

14    illegal gambling operations, defendant conspired to extort other

15    illegal gambling games and has engaged in violent debt collection.

16    He also has an extensive travel history, including flights to Israel,

17    Mexico, Columbia, China, and other locations despite reporting no

18    income.

19    Defendant should be detained pending trial because he's a danger

20    to the community and because he's a flight risk.

21    **II.    STATEMENT OF FACTS**

22    **A.    Defendant's Background**

23    Defendant is a convicted felon.  In June 2001, he was convicted

24    of conspiracy to distribute methamphetamine in violation of 21 U.S.C.

25    § 846 and sentenced to 150 months' imprisonment.  See United States

26    v. Austria, et al., 97-975-ACK (D. Haw.), Dkt. 199.  In July 1996, he

27    was convicted of felony possession of a controlled substance in

28

violation of California Health and Safety Code Section 11377.  This
conviction was reduced to a misdemeanor in 2001.

Defendant has a history of extensive foreign travel.  According
to his border crossing records, since 1997, defendant has flown to
the following locations:

- Paris, France (Airport Code CDG) in November 2015, December
  2015, and October 2016;
- Munich, Germany (Airport Code MUC) in March 2016;
- Hong Kong (Airport Code HKG) in April 2016;
- Beijing, China (Airport Code PEK) in July 2016;
- Punta Cana, Dominican Rupublic (Airport Code PUJ) in August
  2016;
- Tel Aviv, Israel (Airport Code TLV) in July 2017 and
  September 2017;
- San Jose del Cabo, Mexico (Airport Code SJD) in February
  2018;
- Guatemala City, Guatemala (Airport Code GUA) in May 2018;
- Bogota, Columbia (Airport Code BOG) in March 2019 and
  December 2020;
- London, England (Airport Code LHR) in May 2019 and December
  2019;
- Panama City, Panama (Airport Code PTY) in July 2019;
- Medellin, Colombia (Airport Code MDE) in October 2020; and
- Mexico City, Mexico (Airport Code MEX) in February 2021,
  and March 2025.

(Declaration of Samuel J. Diaz ("Diaz Decl.") Ex. E.  He explained to
the Probation Office that he travels "everywhere due to business."

His current business is a hospice business that reportedly generates no income.

**B.   Defendant Was a Partner in an Illegal Poker Operation**

In 2022, the Los Angeles Police Department ("LAPD") and Homeland Security Investigations ("HSI") started an investigation into Yevgeni Gershman, a high-level member of a transnational organized crime organization.  That organization is a violent transnational organized crime group based in Israel that engages in extortion and drug trafficking, among other rackets.

In January 2022, Gershman was detained during the search of a suspected illegal gambling operation in Sherman Oaks, California.  In Gershman's digital device, law enforcement found extensive communications between defendant and Gershman, in which the two discussed illegal gambling operations, debt collection of gambling debts, and refer to each other as "brother," evincing the close bond between the two.

In July 2022, law enforcement executed a search warrant at a residence on Gable Drive in Encino, California (the "Gable House"). Defendant was detained (along with Gershman and other co-conspirators) and found in possession of $31,600 in cash, which defendant admitted were his.  Law enforcement reviewed several digital devices seized at the Gable House and found numerous pay/owe sheet that listed defendant as a partner in the illegal poker operation at the Gable House, along with Gershman, Evgeni Tourevski, and Yarin Cohen.  The digital devices show that defendant's role in the conspiracy included recruiting armed security guards, including an armed guard named C.A., for the Gable House games.

4

**C.    Investigation Revealed Defendant's Involvement in an Array of Criminal Activity**

The investigation revealed that in addition to being a partner in the illegal gambling operation at the Gable House, defendant sought to extort illegal gambling games operated by other hosts.  In a text message conversation with C.A. on September 8, 2021, defendant texted C.A. using a phone number ending in the numbers 6801 that he was "about to shut a game down over here."  Diaz Decl. Ex. F. Defendant was angry about an illegal gambling game that he did not know about.  Later that day, he texted C.A. "fuck these fool Uce," and later added, "[w]e gonna really collect every game now," meaning that they were going to start charging other games for the privilege of being allowed to operate.  Id.  Defendant later added "[w]e are gonna make sure we know all the games trust me.  We been very Lenient," doubling down on his intent to extort other illegal gambling games.

The government also proffers that it is aware of defendant's involvement in violent debt collection, including as recently as earlier this year.

**D.    Search of Defendant's Residence Revealed Firearms**

In July 2025, defendant was indicted for conspiracy to operate an illegal gambling business and operation of an illegal gambling business.  Dkt. 1.

On July 30, 2025, law enforcement searched defendant's residence pursuant to a federal search warrant.  Under the bed in the master bedroom, law enforcement found a gun case containing an unregistered .45 caliber pistol with a magazine inside loaded with eight rounds of ammunition.  Next to the loaded pistol was a second magazine loaded

with seven rounds of ammunition and a box with numerous rounds of ammunitions:



Diaz Decl. Ex. A (zoomed in).  In the left bedside nightstand, law enforcement found an unloaded .22 caliber revolver that they later learned was stolen.  Id. at Ex. B.  They also found defendant's passport and other documents in defendant's name in the master bedroom along with his clothes.  Id. at ¶ 9.  During the search, defendant told law enforcement that the master bedroom was his room and defendant's partner told law enforcement that she had never seen a gun in the home.  Id. at ¶¶ 9-10.

Elsewhere in the residence law enforcement found two more unregistered firearms, including a .32 caliber pistol with a loaded magazine inside (with no rounds in the chamber) inside a case with documents relating to defendant's father-in-law, and an unloaded .22 caliber rifle inside a rifle bag.  Id. at Exs. C-D.

1    **E.    Magistrate Judge Granted Defendant Release on Bond**

2        After his arrest, defendant appeared before the Honorable

3    Jacqueline Chooljian for his initial appearance.  Judge Chooljian

4    ordered defendant released on a $10,000 unsecured bond, finding that

5    the government had failed to establish that defendant was a danger or

6    a flight risk.

7    **III. LEGAL STANDARD**

8        **A.    Standard of Review**

9        The Court reviews the issue of detention de novo.  United States

10   v. Koenig, 912 F.2d 1190, 1192 (9th Cir. 1990).  The determination of

11   detention is to "be decided without deference to the magistrate's

12   ultimate conclusion."  Id. at 1193.  In making this determination,

13   the Court is not confined to the record before the magistrate judge

14   and may consider evidence that "was not presented to the magistrate."

15   Id.

16       **B.    Applicable Law**

17           1.   Standard for Holding a Detention Hearing

18       Under 18 U.S.C. § 3142(f)(2)(A), the government is entitled to a

19   detention hearing in a case that involves a serious risk that the

20   defendant will flee.  "Because of the immediacy with which the

21   hearing should happen, the government or Court need only express

22   their belief that the defendant poses a serious risk of flight for

23   the hearing to commence."  United States v. White, 2018 WL 5291989,

24   at *4 (N.D. Cal. Oct. 19, 2018).  "[T]he belief that entitles the

25   government to the detention hearing is a very low threshold."  Id.

26       The government is also entitled to a detention hearing where

27   there is a serious risk that the defendant will attempt to obstruct

28

justice, or threaten, injure, or intimidate potential witnesses.  18 U.S.C. § 3142(f)(2)(B).

## 2. Detention Standard

Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. 18 U.S.C. § 3142(e); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community."  United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

In deciding whether to grant release on bond, the Court considers (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and circumstances of the danger to any person or the community posed by the defendant's release.  18 U.S.C. § 3142(g).

## IV. DEFENDANT SHOULD BE DETAINED BECAUSE HE IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK

Defendant poses a serious danger to the community and is a risk of flight.  As discussed below, all of the 18 U.S.C. § 3142(g) factors weigh strongly in favor of defendant's detention pending trial.[1]

---

[1] As a threshold matter, the government is entitled to a detention hearing both because defendant poses a serious risk of flight and because there is a serious risk that defendant will obstruct justice and threaten and intimidate government witnesses.

8

## A.    The Nature and Circumstances of the Charged Offenses

Defendant is charged with two serious offenses, including conspiracy to operate an illegal gambling business in violation of 18 U.S.C. § 371 and operating an illegal gambling business in violation of 18 U.S.C. § 1955.  While these offenses do not trigger a presumption of detention, they are nevertheless serious charges with each carrying a potential maximum sentence of five years' imprisonment.  The severity of a charge of operating an illegal gambling business is further underscored by the fact that it qualifies as a RICO predicate.  See 18 U.S.C. § 1961(1) (defining illegal gambling as "racketeering activity").

The circumstances at issue here illustrate the severity of the offenses.  The illegal gambling operation defendant and his partners ran was no weekend poker game between friends.  It was a high-stakes operation where high-rollers won and lost thousands of dollars a night, where the house collected nightly rakes in excess of $10,000, and where women worked the games and were "taxed" on their earnings.

The operation was tied to organized crime.  Gershman, a high-ranking member of an Israeli transnational organized crime organization, was one of the partners of the illegal gambling operation.  Defendant was not only Gershman's partner, but his close associate, with the two often referring to each other as "brother" in their communications.  Despite being a convicted felon, it was defendant's role to procure armed security for the illegal gambling games, and in this way, defendant operated as the muscle of the operation.

9

1    **B.    The Weight of the Evidence Against Defendant Is Strong**

2         Although the weight of the evidence is not the determinative

3    factor in the detention determination, the weight of the evidence

4    against defendant is strong.  The evidence includes large amounts of

5    digital communications containing admissions and detailing

6    defendant's role in the operation and numerous pay/owe sheets listing

7    defendant as a partner, among other evidence.

8    **C.    The Defendant's History and Characteristics Weighs Heavily
          in Favor of Detention**
9

10        Defendant is a convicted drug trafficker with a history of

11   engaging in criminal conspiracies.  Defendant has a prior conviction

12   for conspiracy to traffic methamphetamine arising from the District

13   of Hawaii for which he was sentenced to 150 months' imprisonment in

14   July 2001.  See United States v. Austria, et al., 97-975-ACK (D.

15   Haw.), Dkt. 199.  In that case, defendant was the lead defendant in a

16   five-defendant case charging conspiracy to traffic methamphetamine

17   into Hawaii.  That was defendant's second controlled substance

18   offense, as at the time he had a prior California felony conviction

19   for possession of a controlled substance.

20        Defendant's history and characteristics demonstrate that despite

21   receiving a substantial sentence for partaking in a criminal

22   conspiracy, defendant was not deterred from engaging in another

23   criminal conspiracy in the charged offenses.  Nor was he deterred

24   from possessing an unregistered loaded firearm under his bed mere

25   days ago and a stolen firearm under his bedside drawer, despite being

26   a convicted felon.

27

28

                                    10

1

### D.    Defendant's Release Would Endanger the Community and Prospective Witnesses

2

3        Defendant presents a plain danger to the community and to

4   potential witnesses should he be released.  He is a felon who just

5   days ago was found to have a loaded, unregistered .45 caliber pistol

6   under his bed and a stolen .22 caliber revolver under his bedside

7   table and was residing in a home where two additional firearms were

8   found, including a loaded .32 caliber pistol and a .22 caliber rifle.

9        The investigation has revealed defendant's dangerousness,

10  including discussions of extortion of other illegal gambling games

11  with the security guard at the Gable House.  In those communications,

12  defendant's actions were akin to criminal organizations like the

13  Mexican Mafia in that he discussed collecting a "tax" from other

14  illegal game operators for the privilege of allowing them to operate

15  illegal gambling operations.  The messages were not subtle.  On

16  September 8, 2021, he texted C.A. "fuck these fool Uce," and later

17  added "[w]e gonna really collect every game now."  The government is

18  also in possession of information that defendant has engaged in

19  violent debt collection, including as recently as earlier this year.

20       Defendant is a convicted felon with a close relationship to an

21  Israeli organized crime figure who was in possession of a loaded

22  firearm and a stolen firearm in his bedroom just days ago.  He has a

23  history of seeking to extort others and of violent debt collection.

24  He is a plain danger to the community and grave danger to potential

25  government witnesses.  He should be detained pending trial because no

26  condition or combination of conditions will ameliorate the danger he

27  poses to the public or to potential witnesses.

28

### E. Defendant is a Flight Risk

Defendant is also a serious flight risk. While defendant is a long-time resident of this district and has family ties in the district, he is nevertheless a flight risk. He has the incentive to flee to escape criminal prosecution for the charged offenses and for the firearms found in his residence during the search of his home. Having previously served a 150-month federal sentence, he has obvious incentive to avoid additional time in custody. See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) (explaining that the "penalties possible under the present indictment" provided an "incentive [for the defendant] to consider flight"). According to his border crossing records, in the last ten years he has traveled to France, Germany, Hong Kong, China, the Dominican Republic, England, Israel, Mexico, Columbia, Guatemala, England, and Panama. Defendant's explanation that his travel is for business does not add up in light of his statement to the Probation Office that he operates a hospice business that generates no income. "Defendant's travel history weighs in favor of detention." White, 2018 WL 5291989, at *6. Defendant has the knowledge and experience to flee. Nor is this concern resolved by defendant turning in his passport in light of the proximity of the Mexican border.

Defendant also has the means to flee. In July 2022, during the search of the Gable House, defendant was found in possession of over $31,000 in cash. During the search of defendant's house, law enforcement found a large amount of cash (estimated to be around $15,000 pending an official count) and a Lamborghini truck parked at defendant's home.

That law enforcement recovered a loaded firearm under his bed and a stolen firearm in his night stand not only shows his dangerousness but his disregard for the law.  Despite being a convicted felon defendant possessed firearms as recently as days ago. His failure to follow the law as a felon is predictive for his failure to follow bond conditions should he be released.  See United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting that the effectiveness of pretrial release conditions depends on a defendant's "good faith compliance" with conditions of release).

For these reasons, defendant should be detained because he is a flight risk.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court order defendant detained pending trial.

<u>DECLARATION OF SAMUEL J. DIAZ</u>

I, Samuel J. Diaz, declare as follows:

1.    I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.    I am an Assistant United States Attorney in the Central District of California and represent the government in 25-595-MCS, <u>United States v. Gershman, et al.</u>

3.    On July 30, 2025, law enforcement searched defendant Allan Austria's residence pursuant to a federal search warrant.

4.    From conversations with law enforcement officials at the scene, I proffer the following:

5.    During the search of the master bedroom, under the bed law enforcement found a .45 caliber pistol inside a gun case with eight rounds of ammunition in a detached magazine and numerous other rounds of ammunition in the gun case.

6.    Attached as Exhibit A is a true and correct copy of a photograph of the .45 caliber pistol.

7.    Law enforcement also found an unloaded .22 caliber revolver under the bedside drawer in the master bedroom.  Law enforcement later learned that the firearm has been reported as stolen.

8.    Attached as Exhibit B is a true and correct copy of a photograph of the .22 caliber revolver.

9.    During the search warrant, defendant told law enforcement that the master bedroom was his.  Defendant's passport and other documents in his name were found in the master bedroom along with his clothing.

1      10.   Defendant's partner denied ever seeing any guns in the

2  home.

3      11.   In another bedroom in the home, law enforcement found a .22

4  caliber rifle in a gun bag in a closet.

5      12.   Attached as Exhibit C is a true and correct copy of a

6  photograph of the .22 caliber rifle.

7      13.   In a closet elsewhere in the home, law enforcement found a

8  .32 caliber pistol with a loaded magazine containing eight rounds of

9  ammunition.  The firearm was found next to documents in the name of

10 defendant's father-in-law.

11     14.   Attached as Exhibit D is a true and correct copy of an

12 excerpt of a photograph of the .32 caliber pistol.

13     15.   Attached as Exhibit E is a true and correct copy of

14 defendant's border crossings since 1997.

15     16.   Attached as Exhibit F is a true and correct extract of text

16 messages between defendant and C.A.

17

18                         /s/
                    _____
19                  SAMUEL J. DIAZ

20

21

22

23

24

25

26

27

28

                              15